**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 11, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEWAYNE JENNINGS,

     Plaintiff - Appellant,

v.

JANET DOWLING, Warden; KENYA
SACKETT, Mailroom Supervisor;
JACKIE GOSS, Property Room
Supervisor,

     Defendants - Appellees.

No. 15-6084
(D.C. No. 5:14-CV-00335-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **GORSUCH**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

Dewayne Jennings, an inmate proceeding pro se,[1] sued defendants for violating

his constitutional rights and state law by depriving him of his personal property. The

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Although we liberally construe a pro se litigant's filings, _see Erickson v.
Pardus_, 551 U.S. 89, 94 (2007), we may not "assume the role of advocate," _Yang v.
Archuleta_, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quotations omitted); _see also
United States v. Pinson_, 584 F.3d 972, 975 (10th Cir. 2009), and we do not "fashion
. . . arguments for him," _United States v. Fisher_, 38 F.3d 1144, 1147 (10th Cir. 1994).

district court dismissed his federal claims for failure to exhaust administrative remedies and declined to consider his state-law claims. Mr. Jennings appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Mr. Jennings has been incarcerated at the James Crabtree Correctional Center (JCCC) since 2008. On July 29, 2013, JCCC officials intercepted two packages addressed to him. The packages contained marijuana, tobacco, and benzodiazepine pills. After an investigation and disciplinary proceedings, JCCC personnel removed Mr. Jennings from the general inmate population and placed him into special housing unit (SHU).

According to prison policy, when an inmate is placed in the SHU, his personal property is inventoried and secured. The inmate's allowable personal property is returned to him upon his release from the SHU. But if "excess or unauthorized property" that is not contraband is found during the inventory process, it must be disposed. The inmate is generally permitted to choose the method for disposition. If property found is "contraband," it will be confiscated and disposed of under the contraband policy.

As required, Mr. Jennings' allowable personal property was placed in SHU storage. The inventory of his property revealed that he had multiple items of personal property that were either excess or unauthorized, or contraband. These items were segregated from his allowable personal property, bagged, and tagged.

2

On August 2, 2013, Mr. Jennings was released from the SHU. The next day, he completed a Request to Staff (RTS) form, the first written step in the Offender Grievance Process (OGP) required by the Oklahoma Department of Corrections (ODOC). In the RTS, he complained as follows:

> My problem is that I am missing my property: On Friday 2 of August of 2013, when I picked up my property from SHU storage, I notice[d] that most of my property was missing. On August 3, 2013 C/O Wolfe came on the yard and I asked her about my property s[i]nce she was the one that packed me up. And she told me she sent some of my stuff to [contraband], because I had [too] much stuff. These are the items that I am missing: 1 clear tune fan [sic][;] 1 Address Book (Brown)[;] 1 Pink Bottle of Lotion; 1 Blue Note book (3 ring [binder])[;] My Transcrip[t] . . . from my case (CF-07-1387); [judgments and sentences] (from 3 other Cas[]es); 1 yellow photo album (family photos)[;] 2 Jars of [Folger's] Coffee (summer package); 1 Box of Sweet & Low (Summer package)[;] 3 legal Bookies [sic] . . . [;] (1) 12 in 1 dictionary . . . ; 2 scrap Bookies [sic] of female's [sic] . . . [;] 1 Bar shav[ing] soap; 1 clear case of Beads[;] 1 Blue Box of Beads; 1 Bible Box of Beads; 3 Clear Cover Books of Case Law . . . [;] 1 Gray Canteen . . . [;] 6 Spiritual Book[s] . . . ; (4) 3 x 5 spiral [notebooks][;] 4 Summer Sau[s]age; 1 Ice chest; 1 Gray shorts[;] 1 Koss Titanium headphones[.]

Special Report (SR), Supp. R. at 22-23. Mr. Jennings requested that the prison staff "give me back my property." *Id.* at 22.

A staff member completed a handwritten response to the RTS dated August 7, 2013, which stated:

> Mr. Jennings—Many items mentioned above exceeded allowable items per [the prison's property] matrix. [I]f items were found unaltered & you have proof of purchase you may either send them home at your expense or speak with Mrs. Goss about preparing for visitor pickup; you have 30 days to take care of this matter.

*Id.*

3

On August 27, 2013, Mr. Jennings submitted an Offender Grievance Report Form, the next step in the grievance process. He described his problem as follows:

> My complaint is that I have not received my personal property . . . that was sent to Contraband on July 29, 2013 by C/O Wolfe. This is affecting me because it [is] all of my personal property. My legal papers; court trans[cripts] from my case; legal book; photo album; papers; letters; address book; headphones and all other personal property that was put on [the] inmate property inventory . . . Form 030120A that was [completed by] the inventory officer. . . .

*Id.* at 20-21.

The facility returned this grievance unanswered, stating that the "Grievance [was] submitted out of time from [the] date of incident or date of response to the 'Request to Staff.'" *Id.* at 24. Mr. Jennings appealed the rejection of his grievance, noting he had not received the denial of his RTS until nearly two weeks after the denial. The facility rejected his appeal, again citing the untimeliness of his underlying grievance. He then filed a request to submit his grievance appeal out of time, which was denied without comment.[2]

Mr. Jennings next filed this suit in state court. The defendants removed the action to federal court. In contrast with his RTS and grievance, Mr. Jennings' complaint charged that Kenya Sackett, mailroom supervisor at JCCC,

_____

[2] In their motion to dismiss, the defendants argued that Mr. Jennings had failed to timely and completely exhaust his administrative remedies through the OGP, citing his single untimely grievance. The magistrate judge rejected this argument. He concluded that Mr. Jennings had "attempted in good faith to comply with his obligations under the ODOC Grievance Process but prison officials hindered his attempts." R. at 114. In their objections to the magistrate judge's report and recommendation, the defendants did not focus on the timeliness requirements of the OGP, but instead raised their current argument: that Mr. Jennings' grievance did not address the property described in his complaint that was allegedly lost or missing from SHU storage, and for which he seeks compensation.

4

has confiscated various photos, [books], and other property that the plaintiff['s] family and friends had bought and sent to plaintiff while in prison and kept in SHU storage. This was in violation of prison rules that permitted me to have photos; law books; letters; obituar[ies]. This was done with prejudiced vigilantism to cause me Mental and Emotional stress.

R. at 10. The complaint made essentially identical allegations against Jackie Goss, property room supervisor. In the factual section of his complaint, Mr. Jennings explained:

(A.) On July 29, 2013 I was place[d] in SHU. Mrs. Wolfe C/O conducted a routine inventory of my personal property in connection with this status change[].

(B.) [Sometime] between July 29, 2013 and August 2, 2013, Mrs. Jackie Goss and Mrs. Kenya Sacket[t] went through my personal property and confiscated Law Books; Photo[s]; letter[s] and obituar[ies] of my parents. This intentionally diverted inmate personal property for the[ir] own personal use. This was a malicious and bad faith act by these two employee[s].

*Id.* at 11.

Based on these allegations, Mr. Jennings asserted claims under 42 U.S.C. § 1983 for denial of equal protection, unreasonable search and seizure, and denial of due process. He requested declaratory and injunctive relief and damages. He attached "Exhibit A" to his complaint detailing the items he claimed were missing or destroyed. The items he listed included letters, photos, an obituary, an address book, legal books, and a tube of toothpaste.

The district court found that Mr. Jennings had failed "to administratively exhaust the same claims on which the present action is based" because he "grieved the loss of different property than that for which he now seeks recovery in court."

5

R. at 163. Accordingly, it dismissed his federal claims for failure to exhaust his administrative remedies, and declined jurisdiction over his state-law claims.

Mr. Jennings then filed a "Motion to Reconsider" under Fed. R. Civ. P. 60(b), in which he alleged that the RTS and grievance identified the same property as he listed in the complaint in this action. The district court rejected his argument. It concluded that the property was not the same, and that "[b]y failing to properly identify the property for which he claims loss during the administrative process, [Mr. Jennings] did not provide an opportunity for Defendants to resolve the issue short of litigation. Consequently, he failed to properly exhaust his administrative remedies." R. at 169-70.

## II. DISCUSSION

### 1. Exhaustion Under PLRA

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). We review de novo the district court's finding that an inmate failed to exhaust his administrative remedies. *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010).

Although "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim . . . it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

## 2. **Requirements of ODOC's Grievance Policy**

The OGP contains four steps that an inmate must complete to exhaust a claim. Because the issue here involves the content of Mr. Jennings' grievances, we briefly summarize these procedural requirements. The inmate must speak informally with a case manager or staff member; submit an RTS; file a grievance; and appeal the denial of the grievance. We will assume, as the magistrate judge did, that Mr. Jennings either met or should be excused from these requirements.

We must determine whether Mr. Jennings' grievance sufficiently described the issue that he later raised in his complaint. The OGP provides some guidance concerning the level of specificity required throughout the grievance process. It states that an RTS must "detail[] the issue/incident completely but briefly." OGP IV(C), Supp. R. at 32. It further provides:

> This statement *must be specific as to the complaint, dates, places, personnel involved and how the offender was affected.*

*Id.* IV(C)(2) (emphasis added). Finally, "[o]nly one issue or incident is allowed per grievance." OGP V(A)(4), *id.* at 34.

7

### 3. **Application to Mr. Jennings' Complaint**

The OGP thus contemplates a specific RTS and grievance that describe the particular incident. Mr. Jennings' RTS complained about not getting back his property after C/O Wolfe told him some of it was sent to contraband. He identified specific items. In his grievance, he also mentioned property sent to contraband, and identified different items. In his court complaint, he mentioned yet a third set of property, and complained that it was taken from SHU storage. The different descriptions of the property involved are illustrated by a chart we have prepared, which is attached as an appendix to this order and judgment. Although there is some overlap among the three property listings, we agree with the district court that these varying allegations about different property items did not satisfy the specificity requirements of the OGP. In addition, the differences in the descriptions of the specific property are compounded by the ambiguities between his RTS and grievance and the complaint concerning the fate of the missing property—i.e., whether it was sent to contraband or stolen from his allowed property.

Nor did Mr. Jennings' RTS and grievance meet the purposes of the exhaustion requirement. The Supreme Court has explained that "[e]xhaustion of administrative remedies serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). The first purpose is to protect agency authority, both by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and by discouraging disregard of agency procedures. *Id.* (internal quotation marks omitted). The second purpose is to

8

promote efficiency by permitting claims, where possible, to be settled at an administrative level; and, even where this is not possible, to develop "a useful record for subsequent judicial consideration." *Id.*

These purposes were not met here. Even if the defendants had corrected the concerns that Mr. Jennings complained about in the RTS and grievance, it would not have solved the problem asserted in his complaint: the alleged theft from SHU storage of a *different* set of property than the ones described in the RTS and grievance. Nor did his three sets of different allegations create a useful record for federal-court review. Thus, we affirm the district court's determination that Mr. Jennings failed to fulfill the exhaustion requirement before filing his complaint.

Mr. Jennings makes one additional argument: exhaustion should be excused altogether because he originally filed this case in state court where he claims PLRA's exhaustion requirement did not apply. The defendants then removed the action to federal court. The courts that have addressed this question have concluded that PLRA's exhaustion requirement applies to inmates who sue in state court and then have their cases removed to federal court. *See, e.g.*, *Marziale v. Silas*, No. 4:15CV00655-JLH-JJV, 2015 WL 8431524, at *2 (E.D. Ark. Nov. 10, 2015) (collecting cases), *report & recommendation adopted*, 2015 WL 8485240 (E.D. Ark. Dec. 8, 2015). Mr. Jennings cites no authority to the contrary.

III. **CONCLUSION**

We affirm the district court's judgment of dismisssal.  We grant Mr. Jennings'
motion to proceed in forma pauperis in this appeal, and remind him of his obligation
to make partial payments until the filing fee has been paid in full.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge

10

## APPENDIX

| Item | Identified in RTS | Identified in grievance | Mentioned in complaint, ex. A |
|---|:---:|:---:|:---:|
| Fan | x | x | |
| Address Book | x | x | x |
| Pink Lotion Bottle | x | | |
| Blue notebook | x | | |
| Transcript | x | x | |
| Judgments/Sentences | x | x ("legal papers") | |
| Photo album | x | x | ? (mentions specific photos in detail) |
| Coffee | x | | |
| Sweet & Low | x | | |
| 3 legal books | x | x ("legal book") | x (2 "legal writing" books) |
| Dictionary | x | | |
| "scrap book of females" | x | | |
| Shaving soap | x | | |
| Beads | x | | |
| Books of case law | x | x | |
| Gray canteen | x | | |
| 6 spiritual books | x | | |
| 4 3x5 spiral notebooks | x | | |
| 4 summer sausages | x | | |
| 1 ice chest | x | x | |
| Gray shorts | x | x | |
| Koss titanium headphones | x | x (headphones) | |
| papers | | x | |
| letters | | x | x |
| "all other personal | | x | |

| property on inmate property inventory" | | | |
|---|---|---|---|
| Obituary | | | x |
| Toothpaste | | | x |